UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| LAWRENCE C. BARBEE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 09-2056 |
| CHRISTY-FOLTZ, INC., ) | |
| ) | |
| Defendant. ) | |

# ORDER

In March 2009, Plaintiff Lawrence C. Barbee field a Complaint (#1) against his employer, Defendant Christy-Foltz, Inc. Plaintiff brought suit under Title VII seeking damages for harassment based on race and for retaliation. In October 2010, after a four-day trial, a jury found Defendant liable for harassment, but not for retaliation. The jury awarded Plaintiff compensatory damages in the sum of $10,000, and punitive damages in the sum of $12,500.

During the trial, Defendant filed a Trial Brief (#52) seeking judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which this Court denied. Defendant now brings Defendant's Post Trial Renewal of Motion for Judgment as a Matter of Law (#67), seeking judgment as a matter of law under Federal Rule of Civil Procedure 50(b). Defendant has also filed Defendant's Brief In Support of Post Trial Renewal of Motion for Judgment as a Matter of Law (#68), and Plaintiff has filed Plaintiff's Response to Defendant's Post Trial Renewal of Motion for Judgment as a Matter of Law (#70). After reviewing the parties' memoranda and recalling the evidence and argument presented at trial, this Court **DENIES** Defendant's Post Trial Renewal of Motion for Judgment as a Matter of Law **(#67)**.

### I. Background

The following facts are taken from the evidence presented at trial, with inferences made in favor of Plaintiff, the non-moving party.

Defendant Christy-Foltz, Inc. is a closely held family corporation located in Decatur, Illinois. Christy-Foltz, Inc. created and owns another business entity known as Grohne Concrete Products (hereinafter "Grohne"). Plaintiff works at Grohne as a truck driver. The Grohne plant is an industrial site. A small number of employees work full-time on site, and approximately 15 truck drivers stop at the site periodically throughout the day between deliveries. Truck drivers also routinely report to the site in the morning to receive assignments and at the end of the work day to submit paperwork. At the relevant time period, Plaintiff was the only African American truck driver at Grohne.

Plaintiff presented evidence regarding racial harassment at Grohne. In August 2007, Plaintiff's co-worker Gary Roberts called Plaintiff either a "nigger" or "a dumb nigger."[1] Shortly after, co-worker Terry Aldrich used the word "nigger" when Plaintiff was not present. Plaintiff complained about Roberts' use of the word "nigger" to a union steward, who then informed Ron Grigg, the plant manager. (#63, pp. 9-10). Grigg asked Roberts to apologize to Plaintiff for calling him a nigger. Roberts attempted to make an apology to Plaintiff, in the presence of co-workers Scott Spitzer and Larry Benton. Roberts felt his comment was made in a joking manner, and he told Plaintiff "I didn't think you was going to take it like that." (#63, p. 11.) During this conversation, Spitzer, referring to use of the word "nigger" asked Plaintiff why "you call each other names and it's alright, but when we do it, it's not alright." (#63, p. 12; #64, p. 159). Benton commented, in reference to music that uses the word "nigger," that he did not allow his children to listen to "that nigger shit, and when they do, I tell them to cut it off." (#63, p. 12). Plaintiff immediately told Grigg that he did not think Roberts' apology was sincere. (#63, p. 12).

Both Roberts and Aldrich each received a five-day suspension from work without pay for using the word "nigger." Plaintiff testified that, after this, co-workers began to treat him

---

[1]Plaintiff testified that Roberts said, "I know your ears are burning because here comes my favorite nigger." (#63, p. 8). Roberts testified in his deposition that he thought he called Plaintiff a "dumb nigger."

2

differently. They would not speak to him or wave to him at work, where it was not necessary for the job. (#63, p. 14-15). Several of Plaintiff's co-workers testified that they did not speak to Plaintiff, and that they were afraid any statements they made to Plaintiff might be taken out of context. (#64, pp. 74, 157, 162, 196; #65, pp. 11, 28-29). Plaintiff presented evidence that Grigg told at least one employee, Scott Spitzer, to be careful what he said to Plaintiff. (#64, p. 111). Plaintiff wrote a letter to the company about what was happening, and had a meeting with Hal Schinzler, the president of Christy-Foltz, and Grigg. (#63, p. 15). Plaintiff testified that they told him racial harassment would "not be tolerated," but they did not take any further action. (#63, p. 16).

In October 2007, Plaintiff found what he believed to be a noose hanging at the workplace. The noose was tied out of a sash cord. It was hanging on a coat hanger hook in a break room at the Grohne plant. (Pl.'s Ex. 5). Though Defendants presented evidence that this noose had been tied many years before and had been around at the plant for quite some time, no witnesses provided an explanation for how it came to be in the break room where Plaintiff first saw it. (#64, pp. 58, 172). Upon finding the noose, Plaintiff took a photograph of it, and went directly to Grigg. Grigg asked Plaintiff why he thought this noose was directed at him. Plaintiff asked if he could go home for the rest of the day. (#63, pp. 22-23). A few days later, Plaintiff found a second noose at the workplace. This time, the noose consisted of a heavier rope tied in a slipknot. Plaintiff found it hanging on a wall with other ropes in a back room. (Pl.'s Ex. 6). Defendants presented evidence that it had been used long ago as a tool for a project on the work site, and had been there ever since. (#64, p. 182). Rather than going to Grigg with this discovery, Plaintiff first reported this incident to his therapist, who suggested that Plaintiff call the police. (#63, p. 22). Plaintiff did so, and a police officer investigated the Grohne premises; the officer concluded that no crime had been committed and there was no further police involvement. (#65, p. 63).

In response to the incident with Roberts, Grohne posted an anti-harassment and anti-discrimination policy on a bulletin board in the break room with other work-related notices. (#64, pp. 60-62). Though several employees testified they were aware that the policy was there,

3

many of them had not read it. (#64, p. 200; #65, pp. 26, 91). Plaintiff's counsel emphasized a variety of ways in which the policy as written differed from what actually took place in response to Plaintiff's complaints regarding harassment. (#64, pp. 31, 62-69).

In addition, Ron Grigg testified that he investigated Plaintiff's complaints regarding the nooses, and concluded that they had been in the plant for many years and were not intended to intimidate or harass Plaintiff. (#64, p. 58). Plaintiff provided evidence that this investigation was not a sincere effort. Several employees, including Roberts, testified that Grigg never asked them where the nooses came from. (#65, pp. 29-30, 53). Furthermore, Grigg testified that Plaintiff made a comment to him that Plaintiff expected he could get some money out of the situation. (#64, pp. 81-83). Plaintiff also presented correspondence between Schinzler and Grigg indicating they believed that Plaintiff's request for a transfer to a different truck driving position was motivated by Plaintiff's desire to increase potential damages for a forthcoming lawsuit. (Pl.'s Ex. 8; #64, 98-100). Last, several Grohne employees testified quite frankly that they did not understand how a noose in the workplace might be intimidating or upsetting to an African American, absent other threats. (#65, pp. 41-45, 83). Essentially, there was evidence that Grigg never believed that Plaintiff's complaints of harassment were legitimate, and so Grigg failed to perform an impartial investigation in to Plaintiff's claims about the nooses (#64, pp. 85-86).

The Court instructed the jury that for Plaintiff to succeed on his harassment claim, Plaintiff must show seven elements by a preponderance of the evidence, including proof that Defendant did not take reasonable steps to correct the situation or prevent the harassment from recurring. (#56, p. 15). Also, the jury was presented with a jury instruction regarding punitive damages, taken from the Seventh Circuit pattern instruction. The instruction reads, in part: "You may assess punitive damages only if you find that the conduct of Defendant's managerial employees was in reckless disregard of Plaintiff's rights. An action is in reckless disregard of Plaintiff's rights if taken with knowledge that it may violate the law." (#56, p. 21).

4

The jury found Defendant liable to Plaintiff for racial harassment. The jury award $10,000 in compensatory damages and $12,500 in punitive damages.

## II. Standard

A judgment as a matter of law may be granted by the court, notwithstanding a contrary jury verdict, where the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on an issue. FED. R. CIV. P. 50(a)(1). When deciding a Rule 50(b) motion, the court views the facts in the light most favorable to the non-moving party. *Mathur v. Bd. of Trs.*, 207 F.3d 938, 941 (7th Cir. 2000). The court examines the evidence presented, combined with all reasonable inferences permissibly drawn in favor of the nonmoving party, and determines whether it is sufficient to support the jury's verdict. *Id*. The court may not substitute its view of contested evidence for the jury's determination. *Id*. *See also Davis v. Wis. Dep't. of Corr.*, 445 F.3d 971, 975 (7th Cir. 2006).

## III. Discussion

Defendant seeks judgment as a matter of law in its favor based on two arguments: First, Defendant argues that, as a matter of law, it took reasonable steps to correct harassment or prevent harassment from recurring. Second, Defendant argues that, as a matter of law, its managerial employees did not act in reckless disregard of Plaintiff's rights in any manner that would justify an award of punitive damages.

First, with respect to the issue of reasonable steps, Defendant argues that where co-workers are solely responsible for the creation of a hostile work environment, a plaintiff must prove the employer was negligent in discovering or remedying the harassment. *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009). Defendant argues that no managerial employees were involved in any acts of harassment towards Plaintiff. Defendant further asserts that plant manager Ron Grigg took reasonable steps by asking Roberts to apologize for using the word "nigger," suspending Roberts and Aldrich for a week without pay, and investigating the nooses to discover where they had come from.

Plaintiff responds that more than enough evidence supports the jury's finding that Defendant did not take reasonable steps, and in fact Ron Grigg's response to Plaintiff's complaints regarding harassment caused Plaintiff further harm. Plaintiff summarizes his position well:

> The hostility directed towards Plaintiff was caused by Defendant's managerial employees. The way the suspensions [of Roberts and Aldrich] were handled, the fact management thought Plaintiff was fabricating the entire matter, the directives given to co-employees to ignore Plaintiff, and the manner of the investigation [in to the presence of the nooses] made it impossible for management to correct the situation.

(#71, p. 4).

The Court notes that the testimony of Ron Grigg at trial may have given the jury reason to doubt the sincerity of his efforts to take reasonable steps to remedy harassment that had occurred at the plant. Grigg testified that the company's adoption of an anti-harassment policy, written shortly after Roberts called Plaintiff a "nigger," was not necessary because it was self-explanatory that "discrimination is against the law." (#64, p. 59). He testified that diversity training was not necessary at his company, implying that his employees "knew right from wrong." (#64, p. 89). With respect to Plaintiff's requests for counseling in response to harassment, Plaintiff's counsel asked Grigg, "You didn't think [Plaintiff] needed counseling [in response to harassment] because you didn't think he was telling the truth, right?" Grigg answered "Well, I had my doubts." (#64, pp. 85-86). Grigg testified that, although he was aware that some employees were afraid to talk to Plaintiff, Grigg "didn't see a hostile environment." (#64, p. 86). The Court is mindful that jurors have an opportunity to observe the demeanor of witnesses and assess their sincerity, and observations of this type may have contributed to the jury's conclusion on whether Defendant took reasonable steps to correct the situation.

When deciding a Rule 50(b) motion, the court views the facts in the light most favorable to the non-moving party. *Mathur v. Bd. of Trs.*, 207 F.3d 938, 941 (7th Cir. 2000). The court may not re-weigh the evidence or make credibility determinations. *Id.* Defendant essentially

6

asks this Court to re-weigh evidence and make credibility determinations in its favor to find that Defendant took reasonable steps. For example, Defendant's argument that no managerial employees were involved in harassment simply ignores Plaintiff's evidence that Grigg contributed to Plaintiff's isolation at work. Defendant's argument that Grigg was not negligent in handling Plaintiff's complaints of harassment disregards evidence that Grigg's "investigation" of the nooses was not impartial. Defendant's argument that it adopted an anti-harassment policy ignores evidence that many employees did not read the policy and management did not follow it. Therefore, this Court will not disturb the jury's conclusion that Defendant failed to take reasonable steps to correct harassment or prevent it from recurring.

Second, Defendant argues that the jury did not have a legally sufficient evidentiary basis to award punitive damages. Defendant argues that under Title VII, an employee may recover punitive damages against an employer only if the employee demonstrates that the employer engaged in an intentional discriminatory practice with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). Defendant argues that to impute liability to the employer, a plaintiff must prove that the individuals who discriminated against him were managerial agents acting in the scope of their employment. *Id.* at 543. Defendant asserts that its prompt investigation and reasonable response to Plaintiff's allegations of a hostile work environment preclude Plaintiff from imputing liability to Defendant for punitive damages.

In closing argument, Plaintiff's counsel asked the jury to find the Defendant liable for punitive damages.[2] Plaintiff argued that punitive damages were warranted in light of Grigg's instruction to Scott Spitzer to be careful what he said to Plaintiff, asking the jury to draw the inference that Grigg's instruction contributed towards the isolation that Plaintiff experienced at work. Plaintiff also argued that punitive damages were warranted due to the management's failure to act. Specifically, Plaintiff argued that Defendant failed to make employees aware of

---

[2]Though the official transcript does not include closing arguments, the Court now summarizes those arguments based on the Court's recollection.

7

the anti-discrimination policy that it had adopted, and Defendant failed to follow the policy in any manner. The policy indicated that where an employee complained of harassment, management would perform an impartial investigation, maintain confidentiality in conducting the investigation, and provide counseling to the affected employee. Plaintiff argues the existence of the policy makes it clear that Defendant understood its obligations under Title VII, and Defendant's failure to respond appropriately to Plaintiff's complaints of harassment demonstrated reckless disregard of Plaintiff's rights.

Defendant's legal arguments stand on an underlying factual premise that it conducted a prompt investigation and reasonably responded to Plaintiff's allegations of a hostile work environment. In contrast, Plaintiff asked the jury to infer that Defendant failed to reasonably respond to Plaintiff's allegations because Grigg thought Plaintiff was fabricating the entire situation. The question of whether Defendant conducted a sufficient investigation and otherwise responded reasonably to Plaintiff's allegations is a fact question that was left to the jury. The jury was explicitly instructed that it should only award punitive damages if it found the conduct of Defendant's managerial employees was in reckless disregard of Plaintiff's rights. The jurors came to a factual conclusion that does not support Defendant's argument. That conclusion, however, is supported by evidence and reasonable inferences drawn from the evidence. Therefore, the Court will not disturb the jury's award of punitive damages.

### IV.  Summary

For the reasons stated above, Defendant's Post Trial Renewal of Motion for Judgment as a Matter of Law **(#67)** is **DENIED**.

ENTER this 26th day of January, 2010.

                                                    s/ DAVID G. BERNTHAL
                                                    U.S. MAGISTRATE JUDGE